# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1715

_____

Ronald R. Scarberry,                          *
                                              *
                Appellee,                      *
                                              *   Appeal from the United States
        v.                                     *   District Court for the
                                              *   Southern District of Iowa.
State of Iowa,                                 *
                                              *
                Appellant.                     *

_____

Submitted: October 12, 2005
    Filed:   November 29, 2005

_____

Before ARNOLD, BOWMAN, and MURPHY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The state of Iowa appeals from the decision of the District Court granting, on Sixth Amendment grounds, a writ of habeas corpus, 28 U.S.C. § 2254, to Ronald Russell Scarberry. We reverse.

On June 22, 1998, Scarberry was driving a car in Warren County, Iowa, at one o'clock in the morning when he was stopped by the highway patrol for speeding. The car belonged to Scarberry's passenger and employee, Randy Fry. Both Fry and Scarberry gave permission for their persons and the car to be searched. Inside the car were many of the materials needed to manufacture and distribute methamphetamine, and a small quantity of the drug and a fair amount of cash were found on both

Scarberry and Fry.  Scarberry was arrested and charged with conspiracy to manufacture methamphetamine, possession of a precursor, and possession of methamphetamine.  Scarberry was represented by counsel soon after his arraignment. He was released pending trial.

Five months later, on November 26, 1998, Scarberry was arrested in Polk County, Iowa, by Des Moines police officers who were investigating a methamphetamine lab.  At least one of the officers involved was aware of Scarberry's Warren County arrest on methamphetamine charges but was unaware of the disposition of the charges.  No one in Polk County contacted Warren County authorities about Scarberry before or after his arrest.  Upon his arrest in Polk County, the officers advised Scarberry of his Miranda rights,[1] and he waived those rights. During the Polk County interrogation, the Warren County charges and the alleged Warren County crimes did not come up.  What did come up was Scarberry's cold-cook methamphetamine "recipe," which he related to the officers.  He also admitted to making methamphetamine for his personal use.

Before Scarberry's trial on the Warren County charges, the prosecutors in that county learned of the Polk County statements and disclosed their intention to call the Des Moines police officers to testify in the Warren County trial.  Scarberry's trial counsel filed a motion in limine to exclude the proffered testimony based on the Iowa rules of evidence relating to relevance, probative value, and prejudice.  No Sixth Amendment ground was raised in support of the motion in limine.  A Des Moines officer testified at the Warren County trial, but the court limited the testimony to the general statements Scarberry made about his method of manufacturing methamphetamine.  Scarberry was convicted on all counts.  He was unsuccessful on direct appeal, on his state post-conviction petition, and on appeal from the denial of

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

state post-conviction relief. He then sought habeas relief from the District Court under 28 U.S.C. § 2254.

In his § 2254 petition, Scarberry claimed, as he had in his state post-conviction proceedings, that his trial and appellate counsel were constitutionally ineffective for failing to challenge the admission of the testimony of the Des Moines police officer in the Warren County prosecution on the grounds that allowing testimony about Scarberry's uncounseled Polk County statements violated his Sixth Amendment right to counsel—a Sixth Amendment claim within a Sixth Amendment claim. Scarberry's contention that counsel was constitutionally ineffective is evaluated under the familiar two-part test of Strickland v. Washington, 466 U.S. 668, 687 (1984): Scarberry "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."

In Scarberry's post-conviction appeal, the Iowa Court of Appeals affirmed the state post-conviction court's decision that admitting the evidence in question did not violate Scarberry's Sixth Amendment right to counsel and that Scarberry therefore was unable to show a Sixth Amendment violation under Strickland for ineffective assistance of counsel. The District Court reviewed this conclusion de novo, having determined that neither of the state post-conviction courts had "addressed whether Scarberry's attorneys provided ineffective assistance because both courts determined there was no Sixth Amendment violation." Scarberry v. Mapes, 355 F. Supp. 2d 975, 986 (S.D. Iowa 2005). The District Court misconstrued the opinion of the Iowa Court of Appeals and therefore applied the incorrect standard of review to Scarberry's claim of ineffective assistance. The Iowa Court of Appeals in fact analyzed Scarberry's Strickland claim and concluded that counsel's performance could not be deemed deficient for failure to object to the Des Moines police officer's testimony on the basis that its admission would violate Scarberry's Sixth Amendment right to counsel inasmuch as such an objection would have been entirely without merit. The state court clearly decided the Strickland ineffective-assistance issue.

So the appropriate standard of review, for both the Strickland Sixth Amendment ineffective-assistance claim and the underlying Sixth Amendment right-to-counsel claim, is the deferential one set out in § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[2] Federal habeas relief will not be granted unless the state-court adjudication of the federal constitutional claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). (The material facts are not in issue here.) "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams v. Taylor, 529 U.S. 362, 411 (2000).

The Iowa Court of Appeals noted the undisputed fact that the Des Moines officers did not question Scarberry about the Warren County arrest or charges. Citing McNeil v. Wisconsin, 501 U.S. 171 (1991), the state court concluded, "[T]here was no Sixth Amendment violation necessitating suppression of Scarberry's statements to the officers in Polk County regarding a separate crime." Scarberry v. State, No. 02-1686, 2003 WL 21459037, at *2 (Iowa Ct. App. June 25, 2003). We hold that this conclusion was neither contrary to nor an unreasonable application of clearly established federal law.

In McNeil, the defendant was arrested in Nebraska on a warrant for an armed robbery that occurred in Wisconsin. When officials arrived in Nebraska to return McNeil to Wisconsin, they advised him of his Miranda rights, and he declined to

---

[2]The District Court did apply the AEDPA standard to the state court's analysis of the underlying Sixth Amendment claim that provided the basis for Scarberry's allegation that trial and appellate counsel were constitutionally ineffective under Strickland.

answer any questions but did not ask for counsel. At his first appearance in court in Wisconsin, he was represented by a public defender. After that, another officer who was investigating other crimes—including a murder—met with McNeil, who waived his Miranda rights. McNeil said he was not involved in those crimes. Two days later, when officers returned to talk with him about the same crimes, McNeil again waived his Miranda rights and this time admitted to involvement in the crimes. His statements were used against him in the trial on those crimes, and he was convicted.

The Supreme Court, noting that the Sixth Amendment right to counsel is "offense specific," held that the right "cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced," by a formal charge or indictment, for example. McNeil, 501 U.S. at 175. Under McNeil, it was not a violation of Scarberry's Sixth Amendment rights for the Des Moines police officers to question Scarberry about the Polk County methamphetamine lab, even though the right to counsel had attached and had been invoked on the Warren County methamphetamine charges. See also Texas v. Cobb, 532 U.S. 162, 174 (2001) (holding that home burglary, for which the right to counsel had been invoked, was a separate offense for Sixth Amendment purposes from the murder of two persons that occurred when defendant was discovered during the burglary).

The Iowa Court of Appeals may well have relied on this Court's interpretation of McNeil as set forth in Hellum v. Warden, 28 F.3d 903 (8th Cir. 1994), in coming to its conclusion. On facts very similar to those in this case, we addressed the petitioner's contention that "the interrogation of him outside the presence of his counsel violated his Sixth Amendment right to counsel." Id. at 909. This Court held that the case fell "squarely within the rule laid down in McNeil" and there was no Sixth Amendment violation. Id. In these circumstances, we cannot say that the state court's application of McNeil to Scarberry's underlying Sixth Amendment claim was an unreasonable application of clearly established federal law. To that extent, we agree with the District Court's analysis of the case.

The District Court correctly held that "[t]he Polk County interrogation did not violate the Sixth Amendment as to either charge." Id. at 985. But the court went further: "As soon as [Des Moines] Officer Hickey offered testimony in the Warren County trial, however, Scarberry's Sixth Amendment right to counsel was violated." Id. As we understand the court's reasoning and Scarberry's response to the government's appeal, ultimately the constitutional problem does not lie in the interrogation of Scarberry in Polk County (notwithstanding a great deal of discussion about the interrogation in the District Court's opinion). Instead, "Scarberry has at all times maintained that his Sixth Amendment rights were violated when the State *used* the statements obtained in the Polk County custodial interview in the Warren County trial." Brief of Appellee at 29.

To find this Sixth Amendment violation, the District Court relied on Maine v. Moulton, 474 U.S. 159 (1985), noting that "the Iowa Court of Appeals was unreasonable in failing to apply [Moulton's] principles" to Scarberry's case. Scarberry, 355 F. Supp. 2d at 986. That the state courts did not apply Moulton should not have been surprising, considering that Scarberry did not suggest, much less argue, that Moulton was the clearly established—and controlling—federal law applicable to his case. In fact, he did not make that argument in the District Court either.

In Moulton, the indicted defendant, who was represented by retained counsel, had a meeting with his codefendant, Colson, prior to their trial on pending theft and other charges, in order to discuss defense strategy. Unbeknownst to Moulton, Colson had given authorities a full confession and had agreed to testify against Moulton, in exchange for a plea agreement. Based on some of the information that Colson had already provided, authorities asked Colson to assist in getting evidence that Moulton was plotting to kill a witness who would be testifying against him on the theft charge. To that end, Colson went to the meeting wired by the authorities and elicited incriminating statements from Moulton. Some of those statements were used at Moulton's trial, and he was convicted.

The Supreme Court held that "incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by *knowingly circumventing* the accused's right to the assistance of counsel." Moulton, 474 U.S. at 180 (emphasis added). That is not what happened to Scarberry. The Des Moines officers were investigating Scarberry for possible involvement in a Polk County methamphetamine lab, not for his involvement in the charged Warren County crimes, when Scarberry waived his right to counsel for the interrogation and gave officers his methamphetamine recipe. Neither the Des Moines police officers nor Warren County officials created or exploited "an opportunity to confront the accused without counsel being present." Id. at 176. Because no one tried to circumvent Scarberry's Sixth Amendment right to counsel on the Warren County charges, the District Court erred in applying Moulton in this case to find a Sixth Amendment violation for the use of Scarberry's uncounseled Polk County statements in the Warren County trial. Moulton, at least as interpreted by the District Court, is far from clearly established law on the facts of this case. Indeed, far more germane here is the Moulton Court's comment that "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." Id. It was "by luck or happenstance," not any circumvention of Scarberry's right to counsel, that Scarberry incriminated himself in Polk County in a way that would later prove useful in the Warren County prosecution.

The District Court also concluded that the knowledge of the Warren County officers (that Scarberry had invoked his right to counsel for the offenses charged in Warren County) must be imputed to the Des Moines police officers in Polk County. Scarberry, 355 F. Supp. 2d at 985. The implication is that the Des Moines officers, armed with this imputed knowledge, attempted to circumvent Scarberry's right to counsel on the Warren County charges by "creat[ing] a situation that was likely to result in incriminating statements as to the Warren County charge." Id. The court

-7-

cites <u>Michigan v. Jackson</u>, 475 U.S. 625, 634 (1986), for the proposition that the knowledge of the Warren County authorities should be attributed to the Des Moines police officers. The court's <u>Jackson</u> analysis misses the mark.

The Court in <u>Jackson</u> did say, "Sixth Amendment principles require that we impute the State's knowledge from one state actor to another." <u>Id.</u> But this is dictum and as such is not clearly established federal law. <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. at 412 (noting that clearly established federal law under AEDPA "refers to the holdings, as opposed to the dicta" of the Supreme Court's decisions). In <u>Jackson</u>, the officers in question were present at the arraignment where the right to counsel was invoked, so they had actual knowledge, and it was unnecessary to impute the knowledge of the court to the officers. Moreover, the facts of the case are distinguishable from the facts surrounding Scarberry's claim. Jackson's alleged Sixth Amendment violation arose from one arraignment in a single jurisdiction. In such circumstances, it is true that "[o]ne set of state actors (the police) may not claim ignorance of defendants' unequivocal request for counsel to another state actor (the court)." <u>Jackson</u>, 475 U.S. at 634. But the <u>Jackson</u> Court did not suggest that knowledge of a defendant's attached and invoked right to counsel should be imputed to state actors in another jurisdiction within the state who are investigating a crime separate and apart from the crime with respect to which the defendant already has invoked the right—much less that the right is therefore presumed to have been invoked for an investigation of the defendant anywhere else in the state. And even if the Court had reached such a conclusion in <u>Jackson</u>, it would have been abrogated five years later by <u>McNeil</u>, where the Court held that the Sixth Amendment right to counsel is offense specific and cannot be invoked in one context for all future prosecutions.

We hold that the Iowa Court of Appeals did not unreasonably apply <u>Strickland</u> in concluding that the performance of Scarberry's trial and appellate counsel was not professionally unreasonable when counsel failed to invoke the Sixth Amendment in

challenging the admission of Scarberry's Polk County statements in his trial on the Warren County charges. But even assuming for the sake of argument that we are mistaken in this application of the first part of the <u>Strickland</u> test, we would nevertheless reach the same result because the error by counsel did not prejudice Scarberry's defense.[3] The evidence on the Warren County charges, although largely circumstantial, was nevertheless compelling. Scarberry was stopped driving a car at excessive speed in the middle of the night. A consensual search uncovered large quantities of pseudoephedrine; a number of lithium batteries; muriatic acid; razor blades; gloves that fit only one hand; a roll of plastic tubing; two plastic fuel containers, one of which had contained acid, with plastic tubing attached; a cellular phone; a portable scanner; and a walkie-talkie radio. As the District Court observed, "The items listed as found in the passenger compartment and trunk are either precursors to making meth or can be involved in its distribution." <u>Scarberry</u>, 355 F. Supp. 2d at 978. On his person, Scarberry had $1690 in cash and 0.90 grams of methamphetamine. The evidence supporting Scarberry's defense—that it was Fry's methamphetamine operation, and Scarberry was not involved—also was circumstantial. There is not a "reasonable probability" that Scarberry would have prevailed against the prosecution's considerable evidence even if his statements to the Des Moines officers about his recipe for cooking methamphetamine had not been admitted. <u>Strickland</u>, 466 U.S. at 694. Nor did counsel's assumed deficient performance "render[] the result of the trial unreliable or the proceeding fundamentally unfair." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993). The Iowa court's conclusion that Scarberry did not receive constitutionally ineffective assistance of counsel is neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

---

[3]Scarberry does not contend, and the District Court did not determine, that the alleged Sixth Amendment violation was structural error, where prejudice would be presumed. <u>See</u> <u>generally</u> <u>Strickland</u>, 466 U.S. at 692.

The District Court's grant of the writ is reversed, and the case is remanded with instructions that Scarberry's 28 U.S.C. § 2254 petition be dismissed.

_____